**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

OCTAVIOUS ARNEZ JOHNSON,

               Petitioner,

v.                                         Case No. 3:16-cv-57-J-32JRK

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS, et al.,

               Respondents.

_____

## ORDER

### I.  Status

Petitioner, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. 1) (Petition) on January 7, 2016 (mailbox rule). He also filed a Memorandum of Law, Facts, and Arguments in Support (Doc. 2) (Memorandum). He challenges a 2008 state court (Duval County, Florida) judgment of conviction for robbery (unarmed), which was a lesser-included offense, on two grounds. Petitioner is serving a sentence of twenty-five years with a minimum mandatory term of imprisonment of fifteen years.[1] Respondents filed an Answer to Petition for Writ of Habeas Corpus (Doc. 11) (Answer) with Exhibits (Docs. 11-1 to 11-8) (Ex.). Petitioner filed a Reply (Doc. 16). The case is now ripe for review.[2]

_____

[1] He is serving a life sentence on a separate conviction.

[2] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). (continued...)

## II. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the

---

²(...continued)
"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court, and "further factual development" is not necessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

> State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

3

<u>Bishop v. Warden, GDCP</u>, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

## B. Exhaustion and Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope v. Rich</u>, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that <u>Boerckel</u> applies to the state collateral review process as well as the direct appeal process").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[3] <u>supra</u>, at 747-748, 111 S. Ct. 2546; <u>Sykes</u>,[4] <u>supra</u>, at 84–85, 97 S. Ct. 2497.  A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1)

---

[3] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

[4] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

5

cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice.

Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish

cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive

consideration on the merits of a procedurally defaulted claim if the petitioner can establish

that a fundamental miscarriage of justice, the continued incarceration of one who is actually

innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely

than not that no reasonable juror would have convicted him' of the underlying offense."

---

[5] Murray v. Carrier, 477 U.S. 478 (1986).

Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on

the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). "If there is 'any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard,' then a federal court may not disturb a state-court decision denying the claim." <u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014) (quoting <u>Richter</u>, 562 U.S. at 105). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" <u>Daniel v. Comm'r, Ala. Dep't of Corr.</u>, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting <u>Strickland</u>, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." <u>Id.</u> (citing <u>Richter</u>, 562 U.S. at 105); <u>see also</u> <u>Marshall</u>, 828 F.3d at 1285 ("The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (quotations and citation omitted)).

### III. Analysis

#### A. Ground One

Petitioner claims that the State committed a violation of <u>Giglio v. United States</u>, 405 U.S. 150 (1972),[6] by failing to disclose a plea agreement previously entered into by the State

---

[6] Petitioner also cites to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), but his arguments in his

(continued...)

and David Wiggins, a co-defendant, and by eliciting false testimony with respect to Wiggins'

plea agreement. <u>See</u> Petition at 5-8; Memorandum at 6-14. Respondents argue that the

state court's adjudication of this claim is entitled to deference. <u>See</u> Answer at 15-21.

Petitioner raised this claim in state court in a motion filed pursuant to Florida Rule of

Criminal Procedure 3.850.[7] The state court denied the claim:

> In Ground Three, Defendant claims that the State knowingly presented false material information in violation of <u>Giglio</u>. Specifically Defendant alleges that the prosecutor made false statements during opening that the State did not execute a negotiated plea agreement with codefendant David Wiggins ("Wiggins") in exchange for his testimony against Defendant. Defendant also alleges that the prosecutor knowingly presented false testimony when Wiggins testified that he did not have a negotiated plea agreement with the State.
>
> In order to establish a <u>Giglio</u> violation, a defendant must show that: "(1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material." <u>Guzman v. State</u>, 868 So. 2d 498, 505 (Fla. 2003) (citing <u>Ventura v. State</u>, 794 So. 2d 553, 564- 65 (Fla. 2001)). Here, Defendant cannot show that the testimony provided was false. At trial, Wiggins testified that he pleaded guilty to Robbery, and as part of that plea agreement, he agreed to testify truthfully at Defendant's trial. Wiggins further testified that the State did not promise him any particular sentence for pleading guilty and agreeing to testify. Wiggins stated, however, that he was hoping his testimony would help him get a youthful offender sentence. Defendant attempts to allege that this testimony is false as there was an agreed to sentence. In support of this, he has attached a copy of Wiggin[s'] Plea of Guilty form and Order of Probation as an

---

[6](...continued)
state court post-conviction proceedings largely focused on <u>Giglio</u>. Regardless, as explained below, the record confirms that there was no violation of either at Petitioner's trial.

[7] Insofar as Petitioner is attempting to raise a claim that is different than the one he raised in state court, the claim is unexhausted and procedurally barred on federal habeas review.

exhibit to his Original Motion. Pursuant to these documents, however, it is clear that Wiggins was not promised a particular sentence.

According to Wiggin[s'] plea agreement, he agreed to plea[d] guilty to Robbery "straight up to the court" and agreed to "testify truthfully in co-defendant[] . . . Octavious Johnson['s] [case]." The agreement further provides that Wiggin[]s "by his age, qualified for a possible youthful offender sentence." From this agreement, it is clear that Wiggins testified truthfully at trial. As stated, Wiggins was not promised a particular sentence, but was hoping for a youthful offender designation in exchange for his testimony. Accordingly, the State did not present false testimony in violation of Giglio.

Ex. 10 at 106-07 (internal record citations omitted). Petitioner appealed, and the First District Court of Appeal (DCA) per curiam affirmed the denial of his Rule 3.850 motion without a written opinion. Ex. 14.

Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to federal habeas relief on Ground One.

Even assuming the state court's decision is not entitled to deference, the claim has no merit. The Eleventh Circuit has addressed the parameters of a Giglio claim:

A defendant's right to due process is violated when the prosecution's case includes perjured testimony and . . . the prosecution knew, or should have known, of the perjury. This is a violation under Giglio v. United States, 405 U.S. 150, 153 (1972), and to prevail on this claim, a defendant must establish that the prosecutor knowingly used perjured testimony . . . and that the falsehood was material. The false testimony is material if there is any reasonable likelihood that [it] could have affected the judgment of the jury. The "could have" standard requires a

new trial unless the prosecution persuades the court that the false testimony was harmless beyond a reasonable doubt. <u>Giglio</u>'s materiality standard is more defense-friendly than <u>Brady</u>'s.[8] The question of materiality is one of law which we review de novo.

When a petitioner raises a <u>Giglio</u> error on collateral review, habeas relief will be granted only if the [c]onstitutional violation at the trial level resulted in "actual prejudice" to the petitioner. The alleged error must have had a substantial and injurious effect or influence in determining the jury's verdict. Our circuit applies the <u>Brecht</u> harmless error standard to the habeas review of federal court convictions.[9] The harmlessness question is one of law that we review de novo. The question is also one that turns on whether the Court can say, with fair assurance, that the verdict was not substantially swayed by the error:

> If, when all is said and done, the [court's] conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand. . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not

---

[8] In <u>Brady</u>, 373 U.S. at 87, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." There are "'three components of a true <u>Brady</u> violation: [1] [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued.'" <u>Tanzi v. Sec'y, Fla. Dep't of Corr.</u>, 772 F.3d 644, 661 (11th Cir. 2014) (quoting <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999)). "A defendant cannot meet the second prong when, 'prior to trial, [he] had within [his] knowledge the information by which [he] could have ascertained the alleged <u>Brady</u> material.'" <u>Wright v. Sec'y, Fla. Dep't of Corr.</u>, 761 F.3d 1256, 1278 (11th Cir. 2014) (<u>Maharaj v. Sec'y for Dep't of Corr.</u>, 432 F.3d 1292, 1315 (11th Cir. 2005)). In other words, if a defendant has "'equal access to the evidence[,] disclosure is not required'" and "'there is no suppression by the government.'" <u>Id.</u> (quoting <u>Maharaj</u>, 432 F.3d at 1315 & n.4).

[9] <u>See generally</u> <u>Rhode v. United States</u>, 583 F.3d 1289, 1291 (11th Cir. 2009) ("We have also recognized that the legal principles applicable to § 2254 proceedings generally apply to § 2255 motions to vacate." (citations omitted)).

> substantially swayed by the error, it is impossible
> to conclude that substantial rights were not
> affected. The inquiry cannot be merely whether
> there was enough to support the result, apart
> from the phase affected by the error. It is rather,
> even so, whether the error itself had substantial
> influence. If so, or if one is left in grave doubt, the
> conviction cannot stand.

Phillips v. United States, 849 F.3d 988, 992-93 (11th Cir. 2017) (quotations and citations omitted); Raleigh v. Sec'y, Fla. Dep't of Corr., 827 F.3d 938, 949 (11th Cir. 2016) ("It is by now almost axiomatic that, [i]n order to prevail on a Giglio claim, a petitioner must establish [1] that the prosecutor knowingly used perjured testimony, or failed to correct what he subsequently learned was false testimony, and [2] that the falsehood was material." (quotations and citation omitted)).

Approximately five months before Petitioner's trial (March 17, 2008), Wiggins entered a plea of guilty as documented on a "Plea of Guilty and Negotiated Sentence" form. Ex. 10 at 167-68. Wiggins pled guilty to robbery "straight up to the court," and agreed to testify truthfully against two co-defendants, including Petitioner. Id. at 167. It was also acknowledged on the form that Wiggins "by his age qualifies for a possible youthful offender sentence." Id.

On August 13, 2008, during the State's opening statement at Petitioner's trial, the prosecutor said, "Now, David Wiggins, who you all will hear from[,] . . . he's already pled guilty to robbery and he's got no negotiated agreement."[10] Ex. 2 at 189. During defense

---

[10] Considering the record, it is clear that the prosecutor meant that there was no negotiated sentence because Wiggins had pled "straight up to the court." As explained below, this was fully explored during Wiggins' testimony and addressed by Petitioner's counsel in his closing argument.

counsel's opening statement, he stated, "David Wiggins is the State's star witness in all this, [he] was looking for a deal. They said there's no negotiated plea, but he's looking to get sentenced as a juvenile offender and he'll admit that to you." Id. at 197.

On direct examination of Wiggins, the following exchange occurred:

Q   Did you plead guilty to robbery?

A   Yes, sir.

Q   And as part of your plea to robbery, did you agree to testify truthfully?

A   Yes, sir.

Q   There was no promise as to any amount of time that you could receive, is that correct?

A   No, sir.[11]

Q   In fact, it's possible that you could receive the maximum sentence for that charge, isn't that correct?

A   Yes, sir.

Ex. 3 at 230.[12] On re-direct, the state asked, "You had hoped that you would be released sometime today, wouldn't you?" to which Wiggins replied, "Yes, sir." Id. at 258. But, Wiggins responded, "No, sir," when asked if there was any guarantee or promise made to him by the State as to any sentence he would receive. Id. at 259. He confirmed his understanding that

_____

[11] Taken in context, Wiggins apparently answered the substantive part of the question excluding the prosecutor's statement, "is that correct?"

[12] Petitioner and his co-defendant were tried together but with separate juries. Both juries were in the courtroom during Wiggins' entire testimony. On cross-examination by Petitioner's co-defendant's counsel, Wiggins testified that he understood his maximum penalty to be 15 years, but he was hoping to be sentenced as a youthful offender, which carried a "six year type sentence." Ex. 3 at 250. He also acknowledged that he was hopeful his testimony would help him get the six year sentence. Id. at 250-51.

his sentence would be determined by a judge at a later date. Id.

In the State's closing argument, the prosecutor stated in part:

> And is he [(Wiggins)] hoping for this magical youthful offender sentence that you heard defense counsel mention? Of course he is. I mean why wouldn't he be? Who wouldn't hope, you know, when they're taking a leap of faith and pleading guilty to a sentence that carries a maximum of 15 years in the Florida State Prison, that they're not going to get something out of pleading guilty and then becoming a cooperating witness? I mean it's just unreasonable to think that. He even answered, he said, yeah, I'm hoping that. But does that give him any reason to fabricate the fact that Octavius Johnson was the getaway driver or that Octavius Johnson told him and showed him where to get that additional money from the register? Absolutely not. I mean what good would that do him to come in here if he's hoping to get the best deal he can and lie about something, but then confess that he's the guy on the video taking all this money? He pled guilty and the State promised him nothing. It's completely up to the Court as to what happens with David Wiggins.

Ex. 4 at 416-17. In Petitioner's counsel's closing argument, he said, in part:

> What was the one thing that the State told you during their opening statement? They were going to prove this was a well-organized crime. This was well-organized, well-oiled. And what's the very second thing you learn when their second witness came up, David Wiggins, who was their star witness? He was the one they had to use to tie in what you couldn't see on video. That's where his six year hope is coming from.
>
>     . . . .
>
> David Wiggins is hoping to get a six year deal. When he's sentenced, he's hoping to get a six year deal as a youthful offender, which could even require probation, which is probation, so he has every incentive to get up there and tell you all what it is the State would like him to tell you in order to get his deal. He has every incentive at that point to not tell the truth because it's him and Dexter Curry that are going in the store to rob it.

. . . .

The other part where David Wiggins was really important, where his testimony is really needed to get his six year offer, is where was - - and the State's talked about this a lot here in their closing. Getaway car. Getaway car. Getaway car. Splitting the money, splitting the money, splitting the money. See, they need it. They need that to help establish their case. They can't provide it any other way because the video doesn't show Octavius Johnson getting in a getaway car. . . .

. . . .

All David Wiggins wants to tell you is whatever it's going to take to get him his six year offer, his six year deal. . . . He's not to be believed. He wants his six year deal.

Ex. 4 at 426, 429-30, 435-37.

During the State's rebuttal, the prosecutor said:

Now, Mr. Davis ([Petitioner's trial counsel)] talked a lot in closing arguments about this six year offer, which is incorrect. There's no six year offer with David Wiggins. There's no agreement[13] with David Wiggins. Mr. Wiggins has pled guilty. He has a maximum possible sentence of 15 years. What David Wiggins told you on the stand is that he was hoping, hoping to get what would be called some kind of youthful offender sentence, . . . and he told you, that was my hope. Obviously he's going to hope for whatever best he could.

Ex. 4 at 447.

This Court finds no merit in Petitioner's claim. Wiggins pled guilty and the plea form was filed in his case on March 17, 2008, months before Petitioner's trial. Petitioner and his counsel were well aware of the terms of the plea form before trial. Mr. Wiggins' plea deal was addressed by the State and defense counsel in their opening statements and closing

---

[13] Again, the record reflects that there was no agreement as to the particular sentence Wiggins would receive.

arguments, as well as during Wiggins' testimony at trial. The written plea form shows that Petitioner pled guilty "straight up to the court" and the State did not agree to any definitive sentence. The jury was well aware that Wiggins was hoping to receive a lesser sentence in exchange for his testimony against his co-defendants. Despite Mr. Wiggins receiving a more favorable sentence than he even hoped for (time served (356 days) plus 2 years of probation),[14] the Court finds there was no violation of <u>Giglio</u> (or <u>Brady</u>) during Petitioner's trial with respect to Mr. Wiggins' plea deal with the State. Ground One is denied.

### B. Ground Two

Petitioner claims that his trial counsel was ineffective for failing to secure a witness' attendance at trial. <u>See</u> Petition at 9-11; Memorandum at 15-20. According to Petitioner, the witness, Dexter Curry, an individual who was also present during the commission of the robbery, would have provided "exonerating testimony [that] would have added corroborating weight to [Petitioner's] testimony." Memorandum at 17; <u>see also</u> Reply at 16. Respondents argue that the state court's decision is entitled to deference, and that part of Petitioner's arguments were never raised in state court and are therefore unexhausted and procedurally barred. <u>See</u> Answer at 21-32.

On direct appeal, Petitioner raised a related claim, which this Court addresses for purposes of background and completeness. He argued that the trial court erred in excluding Curry's testimony. In affirming Petitioner's conviction, the First DCA stated:

> We first look to exactly what happened (and did not

---

[14] <u>See</u> Doc. 1-3 at 5; <u>see also</u> <u>State of Florida v. Wiggins</u>, No. 16-2007-cf-13973-AXXX-MA (Fla. 4th Cir Ct. 2008) (judgment entered September 3, 2008). On November 10, 2010, Wiggins' probation was revoked and he was committed to the custody of the Florida Department of Corrections for 10 years.

happen) here. . . . Most significantly, defense counsel neither proffered Curry's testimony, nor explained in any meaningful detail the content of that expected evidence. In fact, defense counsel offered no preview of Curry's intended testimony when the State objected to defense counsel's intent to call Curry as a witness. The defense first revealed its intent after the close of State's evidence and denial of a motion for judgment of acquittal. Only just before jury charge, and after the defense rested, did counsel offer a brief statement regarding the purpose of Curry's testimony, asserting, "His proffered testimony would be . . . that it was he and David Wiggins who committed the robbery and that . . . Johnson did not." This cursory preview of Curry's testimony, largely devoid of substantive content, provided no basis for the court to assess what effect, if any, the defense's discovery violation had upon the State's ability to properly prepare for trial.

. . . .

The State did not stipulate to defense counsel's proffer. Even assuming a proffer, though, Curry's testimony would not differ in any significant respect from that already offered by the State's witnesses and by Johnson himself. Importantly, we cannot conclude that Curry's evidence would have impaired the State's case. Mere encouragement for another to commit a criminal act may be criminal in and of itself when, as here, such encouragement is coupled with a jury instruction on the law of "principals." <u>See</u> Fla. Standard Jury Instructions (Crim.), 665 So. 2d 212, 214 (Fla.1995) (stating defendant is a principal if she had "conscious intent that the criminal act be done" and "said some word which was intended to and which did incite, cause, encourage, assist or advise [another] to actually [commit] . . . the crime"). Given the foregoing instruction, we do not see how Curry's testimony would have been "substantially favorable."

Curry, moreover, was not even available to provide the allegedly exonerating testimony, meaning Johnson cannot satisfy the third of the <u>Geralds</u>[15] elements, either. Defense counsel did not subpoena Curry and was unable to procure his attendance by requests for an order to transport. This inability to locate Curry would be sufficient in itself to warrant the denial

---

[15] <u>Geralds v. State</u>, 674 So. 2d 96 (Fla. 1996).

17

> of Johnson's motion [to continue], but also speaks to defense
> counsel's lack of prior diligence in obtaining the witness's
> presence. Finally, we will not overlook that the motion came
> only after the State had presented its case and rested. The
> timing alone of such a motion raises many questions, none of
> which are addressed by appellant. We find no abuse of
> discretion in denial of the motion.

Ex. 8; <u>Johnson v. State</u>, 25 So. 3d 662, 665-67 (Fla. 1st DCA 2010).

In his Rule 3.850 proceeding, Petitioner raised the same ineffective assistance of

counsel claim he raises in the instant Petition. The state court denied the claim:

> In Ground One, Defendant asserts that counsel was
> ineffective for failing to secure Dexter Curry ("Curry") as a
> witness at trial. Defendant avers that Curry would have testified
> that Defendant did not commit the robbery and would have
> corroborated Defendant's own testimony.
>
> . . . .
>
> Assuming <u>arguendo</u> that counsel was deficient for failing
> to secure Curry as a witness, Defendant cannot show that the
> omission of Curry's testimony was prejudicial. At trial, defense
> counsel attempted to call Curry as a witness, but conceded
> that he was unable to find him. Defense counsel also sought a
> continuance in order to obtain Curry's testimony, but this Court
> denied the continuance as Curry was not listed as a witness.
> In its Opinion affirming Defendant's judgment and conviction,
> the First DCA addressed this issue and stated while counsel
> did not engage in prior diligence to obtain Curry's testimony,
> "we do not see how Curry's testimony would have been
> 'substantially favorable.'" The First DCA reasoned that Curry's
> testimony would not have differed in any significant respect
> from the testimony already offered by Defendant and other
> State witnesses. This Court agrees.
>
> Defendant testified that he went into a dollar General
> store with Curry, Erwin Washington, and David Wiggins.
> Defendant stated that David ran around the front counter and
> started pulling money out of the cash register. Defendant
> testified that at that time he told David, "if you're going to get it,
> get it all." As the First DCA articulated in regard to the instant

case, "[m]ere encouragement for another to commit a criminal act may be criminal in and of itself when, as here, such encouragement is coupled with a jury instruction on the law of 'principals.'" As Curry's testimony would not have changed the outcome of Defendant's case, Defendant cannot show that he was prejudiced by its omission.

Ex. 10 at 103-05 (internal record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the denial of his Rule 3.850 motion without a written opinion. Ex. 14.

Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to federal habeas relief on Ground Two.

Alternatively, the claim has no merit. Petitioner has not shown that the outcome of his trial would have been different if Curry had testified. Thus, even assuming Petitioner's trial counsel was deficient in failing to secure Curry's testimony for trial, Petitioner is not entitled to relief on Ground Two as he cannot show prejudice.[16]

Accordingly, it is

---

[16] Insofar as Petitioner is attempting to raise a claim that is different than the one he raised in the state courts, the claim is unexhausted and procedurally barred from federal habeas review. Nevertheless, to the extent Petitioner argues that the charging information "omits the princip[al] language" and therefore he "cannot be convicted of allegations not found in the Charging Information," Petition at 9, such claim is without merit because the state was not required to allege in the charging information that it would be trying Petitioner under a principal theory. See State v. Larzelere, 979 So. 2d 195, 215 (Fla. 2008) ("Under Florida law, a person who is charged in an indictment or information with commission of a crime may be convicted on proof that she aided or abetted in the commission of such crime."); State v. Roby, 246 So. 2d 566, 571 (Fla. 1971) ("[I]t is immaterial whether the indictment or information alleges that the defendant committed the crime or was merely aiding or abetting in its commission, so long as the proof establishes that he was guilty of one of the acts denounced by the statute.").

**ORDERED**:

1.      The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.

2.      The Clerk shall enter judgment dismissing this case with prejudice, terminate any pending motions, and close the file.

3.      If Petitioner appeals this Order, the Court denies a certificate of appealability.[17] Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 17th day of January, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

---

[17]   This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), "or that the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quoting Slack, 529 U.S. at 484). "Where a district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. After consideration of the record as a whole, the Court will deny a certificate of appealability.

JAX-3 1/14
c:
Octavious Arnez Johnson, #120822
Counsel of Record